United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NATALIE MARTEL,

          Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

          Defendant.

_____/

No. C 11-02961 CRB

**ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; (2) DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; (3) VACATING DEFENDANT'S FINAL DECISION; AND (4) REMANDING FOR RECONSIDERATION**

In this case, Natalie Martel ("Plaintiff") seeks review of the Social Security Commissioner's ("Defendant's") denial of her request for supplemental security income ("SSI"). Before the Court are two motions: (1) Plaintiff's Motion for Summary Judgment and (2) Defendant's Cross-Motion for Summary Judgment. For the reasons discussed below, the Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendant's Cross-Motion for Summary Judgment. The Court VACATES Defendant's final decision and REMANDS for further consideration consistent with this Order.

## I.    PROCEDURAL BACKGROUND

Plaintiff originally filed for SSI on November 16, 2005. AR 17. Defendant denied her claim initially on June 21, 2006, and upon reconsideration on August 28, 2007. Id.

---

[1]   Carolyn Colvin became the Acting Commissioner of Social Security on February 14, 2013, and is therefore substituted for Michael Astrue as the Defendant in this action. See 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d). This Order refers to Colvin as the "Commissioner."

United States District Court
For the Northern District of California

1   Plaintiff appealed the Defendant's decision, and Administrative Law Judge ("ALJ") Thomas

2   P. Tielens heard the appeal on December 4, 2008.  Id.  The ALJ found Plaintiff not disabled

3   in his written decision of April 8, 2009.  Id.  The Appeals Counsel denied her request for

4   review on September 18, 2009, making the ALJ's decision the Defendant's final decision.

5   AR 4.  Plaintiff filed the present action on June 16, 2011.  Compl. (dkt. 1).  Plaintiff alleges

6   (1) that Defendant's actions, findings, and conclusions were not supported by substantial

7   evidence, and (2) that the ALJ employed incorrect legal standards in determining the ultimate

8   issues.  Id. ¶ 6.  She now seeks a judgment from this Court vacating Defendant's final

9   decision and remanding for payment of benefits without rehearing, or alternatively, vacating

10  Defendant's final decision and remanding for rehearing, as the Court deems proper.  MSJ

11  (dkt. 30) at 1.

12  **II.     LEGAL STANDARDS**

13         **A.     Judicial Review of Social Security Administration Determinations**

14         A district court reviews the Commissioner's final decision to determine whether it is:

15  (1) based on proper legal standards; and (2) supported by substantial evidence in the record

16  as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial

17  evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater,

18  94 F.3d 520, 522 (9th Cir. 1996).  It is "such relevant evidence as a reasonable mind might

19  accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401

20  (1971).  The Court must consider the record as a whole, including the evidence that supports

21  and the evidence that detracts from the Commissioner's conclusion.  See Howard v. Heckler,

22  782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

23         The court may not affirm the Commissioner's decision "simply by isolating a specific

24  quantum of supporting evidence."  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)

25  (citing Jones, 760 F.2d at 995).  However, if substantial evidence supports the administrative

26  findings, or if there is conflicting evidence supporting a particular finding, the

27  Commissioner's finding is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th

28  Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational

2

1    interpretation, one of which supports the Commissioner's decision, the decision must be

2    affirmed, and may be set aside only if the Commissioner applied an improper legal standard

3    in weighing the evidence.  See Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); see

4    also Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

5          Summary judgment is a method for disposing of an action in which there is no

6    genuine issue of material fact, and the moving party is entitled to judgment as a matter of

7    law.  See Fed. R. Civ. P. 56.  The burden of establishing the lack of a genuine issue of

8    material fact is on the moving party.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

9    (1986).  An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder

10   to find for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

11   248-49 (1986).  A fact is "material" if it could affect the outcome of the case.  See id. at 248.

12   All inferences to be drawn from the underlying facts must be viewed in the light most

13   favorable to the nonmoving party.  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,

14   809 F.2d 626, 630 (9th Cir. 1987).  "The district court need not examine the entire file for

15   evidence establishing a genuine issue of fact, where the evidence is not set forth in the

16   opposing papers with adequate references so that it could conveniently be found."  Carmen v.

17   S.F. Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

18          **B.      Standard for Determining Disability**

19          A person is "disabled" for purposes of receiving SSI if he or she is unable to engage in

20   substantially gainful activity due to a physical or mental impairment that has lasted for a

21   continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).  Social Security

22   disability cases are evaluated under a five-step test.  20 C.F.R. § 416.920(a)(4).  In the first

23   step, the ALJ must determine whether the claimant is currently engaged in substantially

24   gainful activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is not so engaged, the second

25   step requires the ALJ to determine whether the claimant has a "severe" impairment which

26   significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. §

27   416.920(a)(4)(ii).  If the ALJ concludes that the claimant does not have a "severe"

28   impairment, the claimant is not "disabled" and the claim is denied.  Id.  If the claimant does

**United States District Court**
For the Northern District of California

1  have a "severe" impairment, the third step requires the ALJ to determine whether the

2  impairment meets or equals the criteria of an impairment listed in the relevant regulation.  20

3  CFR § 404, Subpt. P, App. 1; 20 C.F.R. § 416.920(a)(4)(iii).  In the fourth step, the

4  Commissioner must determine whether the claimant has sufficient residual functional

5  capacity (RFC) to perform his or her past work.  20 C.F.R § 416.920(a)(4)(iv).  If so, the

6  claimant is not "disabled" and the claim must be denied.  Id.  The claimant has the burden of

7  proving that he or she is unable to perform past relevant work.  Drouin v. Sullivan, 966 F.2d

8  1255, 1257 (9th Cir. 1992).  If the claimant meets this burden, he or she has presented a

9  prima facie case of disability.  Id.  In the fifth step of the analysis, the burden shifts to the

10  Commissioner to establish that the claimant can perform other substantial gainful work.  20

11  C.F.R. § 416.920(a)(4)(v).  If the Commissioner fails to meet this burden, the claimant must

12  be found disabled.  Id.

13  **III.     DISCUSSION**

14       **A.     The ALJ's Decision**

15       At step one of the five-step sequential analysis, the ALJ found that Plaintiff has not

16  engaged in substantially gainful activity since the date of her application, November 16,

17  2005.  AR 19.  At step two, he found that Plaintiff has the following severe impairments:

18  right upper extremity and cervical residuals post bicycle/vehicular accident/injury in January

19  2004; mental impairment with varying inconclusive diagnoses such as: generalized anxiety

20  disorder, personality disorder, ADHD, bipolar disorder, organic mental disorder; and a

21  history of drug and alcohol abuse with varying dates of remission and likely ongoing

22  marijuana use.  Id.  At step three, he found that Plaintiff's impairments and combination of

23  impairments did not meet or medically equal one of the regulatory listed impairments.  Id.  In

24  so finding, the ALJ considered whether Plaintiff satisfied the "paragraph B" criteria, which

25  require that a claimant's mental impairment result in at least two of the following: marked

26  restriction of activities of daily living; marked difficulties in maintaining social functioning;

27  marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of

28

decompensation,[2] each of extended duration.  Id.  The ALJ concluded that Plaintiff's mental impairment was mild with respect to restrictions of daily living; mild with respect to difficulties in maintaining social functioning; and mild with respect to difficulties in maintaining concentration, persistence, or pace.  AR 20.  He also concluded that the evidence showed no episodes of decompensation.  Id.  Prior to step four, the ALJ determined that Plaintiff has the RFC to perform light work, limited by the following restrictions: occasional overhead work with the dominant right upper extremity, simple repetitive tasks, and limited public interaction.  AR 20-25.  As part of this analysis, the ALJ also determined that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of her symptoms were not credible to the extent that they were inconsistent with his RFC analysis. AR 22-24.  At step four, the ALJ found that Plaintiff had no past relevant work.  AR 25.  At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC, and concluded that there are jobs that exist in the national economy that Plaintiff can perform. AR 25-26.  Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act (SSA).  AR 26.

**B.    Analysis**

Plaintiff avers that the Commissioner's decision denying benefits should be vacated and remanded for reconsideration in light of the following errors: (1) the ALJ discredited the opinions of Plaintiff's treating physician, examining psychiatrist, and consultative examining psychologist without substantial evidence; (2) the ALJ failed to find that Plaintiff's impairments met or equaled at least Listing 12.08—Personality Disorders (ADHD) at Step Three; (3) the ALJ discredited Plaintiff's testimony without adequate cause; (4) the ALJ determined Plaintiff's RFC without considering all limitations established by her history of medical and mental impairments.  See MSJ at 15.  Conversely, Defendant urges that the ALJ's decision denying benefits was properly supported by substantial evidence, and should therefore be upheld.  See generally XMSJ (dkt. 31).  Defendant denies that the

---

[2]  "Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)."  3 Social Security Law & Practice § 42:124 (2010).

1  aforementioned issues amount to legal error.  See XMSJ at 7-16.  Defendant further

2  identifies Plaintiff's refusal to obtain a consultative examination from a psychiatric specialist

3  of the ALJ's choosing as an independent basis on which to affirm the denial of benefits.

4  XMSJ at 17-19.  The Court addresses each of the parties' contentions in turn.

5              **1.  The ALJ's Rejection of Plaintiff's Treating and Examining Source Opinions Was Unsupported by Substantial Evidence in the Record**

6         Plaintiff contends that the ALJ did not properly credit the medical opinions of her six-

7  year treating physician Dr. Witte, her examining psychiatrist Dr. Goodheart, and her

8  consultative neuro-psychologist/psychologist Dr. Drew.  MSJ at 16-19.  In the Ninth Circuit,

9  courts "distinguish among the opinions of three types of physicians: (1) those who treat the

10  claimant (treating physicians); (2) those who examine but do not treat the claimant

11  (examining physicians); and (3) those who neither examine nor treat the claimant

12  (nonexamining physicians)."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally,

13  more weight is given to a treating physician's opinion as to the nature and severity of a

14  claimant's  impairment(s).  20 C.F.R. § 416.927(c)(2); Winans v. Bowen, 853 F.2d 643, 647

15  (9th Cir. 1987).  Nevertheless, a treating physician's opinion is only regarded as controlling

16  where it is "well-supported by medically acceptable clinical and laboratory diagnostic

17  techniques and is not inconsistent with the other substantial evidence in [the] case record."

18  20 C.F.R. § 416.927(c)(2).  Where the treating doctor's opinion is not contradicted by

19  another doctor, it may be rejected only for "clear and convincing" reasons.  Baxter v.

20  Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is

21  contradicted by another doctor, the Commissioner may not reject this opinion without

22  providing "specific and legitimate" reasons supported by substantial evidence in the record

23  for so doing.  Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).

24         The opinion of an examining physician, in turn, is entitled to greater weight than the

25  opinion of a nonexamining physician.  Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990);

26  Gallant v. Heckler, 753 F.2d 1450 (9th Cir.1984).  As is the case with the opinion of a

27  treating physician, the Commissioner must provide "clear and convincing" reasons for

28  rejecting the uncontradicted opinion of an examining physician.  Pitzer, 908 F.2d at 506.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    And like the opinion of a treating doctor, the opinion of an examining doctor, even if

2    contradicted by another doctor, may only be rejected for "specific and legitimate" reasons

3    that are supported by substantial evidence in the record.  Andrews, 53 F.3d at 1043.

4         While the ALJ's decision referenced a number of issues that might be bases on which

5    to question the conclusions of Dr. Witte, Dr. Goodheart, and Dr. Drew, the Court finds that

6    the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in

7    the record for rejecting these treating and examining source opinions.[3]  The Court now

8    describes each of the medical opinions to which the ALJ cited in making his determination

9    that Plaintiff is not disabled.

10                           **a.    Dr. Witte**[4]

11        The ALJ rejected Dr. Witte's opinion for the following reasons: (1) he did not initially

12   provide progress or treatment notes in support of his Mental Impairment Questionnaire

13   (MIQ);[5] (2) he did not complete the DSM-IV diagnosis or global assessment of functioning

14   section of the MIQ; (3) he consistently notes that medications have helped and that Plaintiff

15   is improving; and (4) he is not a specialist in the field of psychiatry or psychology and no

16   specialist has been able to confirm his diagnosis of bipolar disorder.  AR 22-25.  The Court

17   addresses each of these issues in turn.

18        First, the Court recognizes that an ALJ may permissibly reject a check-off report that

19   does not contain any explanation.  See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996).

20   However, Dr. Witte provided his progress and treatment notes to the ALJ prior to the date of

21   the administrative hearing.  AR 276-88.  Dr. Witte's notes indicate that he had been seeing

22

23        [3]    Although the record reflects some uncertainty as to Plaintiff's precise medical diagnoses,
     all three physicians agree that she suffers from some combination of severe mental impairments.
24   Nevertheless, because of this discrepancy as to Plaintiff's medical diagnoses, the Court evaluates the
     ALJ's consideration of Dr. Witte, Dr. Goodheart, and Dr. Drew's medical opinions under the less
25   stringent "controverted" standard.

26        [4]    Dr. Witte is Plaintiff's treating physician. AR 22. He is a family practitioner. AR 25. He
     is not a specialist in the field of psychiatry or psychology. Id.

27        [5]    The MIQ includes a Psychological Review Technique Form (PRTF). AR 262. The PRTF
28   is used to evaluate the severity of and functional limitation caused by a claimant's mental impairment.
     It is particularly relevant at steps two and three of the five-step analysis as it tracks the "paragraph B"
     criteria, which the Court explains in greater detail in Section III.B.2.

United States District Court
For the Northern District of California

Plaintiff every two months from August 2007 to September 2008, during which time he treated her for "general anxiety disorder/bipolar disorder/?ADHD." Id. His treatment notes, while illegible and cursory at points, document Plaintiff's symptoms, her clinical presentation, prescribed medications, her various responses to those medication, and changes to her treatment. Id. Thus, the Court finds the ALJ's assertion that he was not provided with progress or treatment notes to be entirely without merit.

Second, the ALJ took issue with Dr. Witte's not having provided a DSM-IV diagnosis or global assessment of functioning, two metrics that apparently would have been helpful in assessing Plaintiff's impairment. AR 259. However, the regulations do not require that a medical opinion contain this type of evaluation in order to be found credible. The ALJ concedes that Dr. Witte provided other relevant information on the MIQ that relates primarily to Plaintiff's anxiety-related symptoms. AR 259-63. In terms of accompanying explanation, he indicated that Plaintiff was very psychologically fragile and anti-social, fearful and somewhat paranoid, and tremendously fearful. AR 260-61. He also noted that Plaintiff had "poor stress management" and "poor social interaction at times." AR 262. Finally, Dr. Witte assessed Plaintiff's degree of functional limitation as a result of her mental impairments. Id. This metric is particularly relevant for determining the severity of a claimant's impairment at steps two and three of the ALJ's disability assessment. Contrary to the ALJ's findings at step three, Dr. Witte found that Plaintiff's mental impairment was moderate as to restriction of activities of daily living, marked as to difficulties in maintaining social functioning, often as to deficiencies of concentration, persistence, or pace, and repeated (three or more) episodes of deterioration or decompensation. Id. The ALJ made no mention of Dr. Witte's assessment in this regard. The Court finds that the ALJ's failure to mention this portion of Dr. Witte's opinion was error. See Nguyen v. Astrue, 179 Soc. Sec. Rep. Serv. 198, *13 (N.D. Cal. June 11, 2012) (similarly finding error where the ALJ failed to properly credit the opinion of claimant's treating physician as to the severity of claimant's impairment).

**United States District Court**
For the Northern District of California

1    Third, the record does not fully support the ALJ's assertion that Dr. Witte consistently

2    notes that medications have helped and that Plaintiff is improving.  On the MIQ, Dr. Witte

3    notes that Plaintiff "may improve with corrections in medication [and] ongoing

4    psychotherapy."  AR 261.  His progress and treatment notes state the following: "Celexa

5    helped for a while - now not helping at 2/day," AR 278; "'sleeping pills' not helping," AR

6    280; "Doing better" and "much improved," AR 285; "Meds have helped," AR 286.  These

7    statements do not reflect a consistent pattern of improvement.  Additionally, the ALJ plucked

8    these "improvement" notes out of a much larger record that documents a plethora of other

9    clinical observations and treatment notes that more fully support Dr. Witte's medical opinion

10   that Plaintiff suffers from serious functional limitations as a result of her mental impairment.

11   Thus, the Court declines to assign these "improvement" observations any greater weight than

12   they are entitled in light of Dr. Witte's other progress and treatment notes.

13   Finally, the ALJ also disregarded Dr. Witte's medical opinion because he is not a

14   specialist in the field of psychiatry or psychology and no specialist has been able to confirm

15   his diagnosis of bipolar disorder.  AR 25.  This finding directly contravenes Ninth Circuit

16   precedent.  See Lester, 81 F.3d at 833 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th

17   Cir. 1987)) (finding that the opinion of a treating physician who prescribes medication is

18   "'competent psychiatric evidence' and may not be discredited on the ground that he is not a

19   board certified psychiatrist").  Generally more weight is afforded "to the opinion of a

20   specialist about medical issues related to his or her area of speciality than to the opinion of a

21   source who is not a specialist."  20 C.F.R. § 416.927(c)(5).  However, a treating physician's

22   "continuing relationship with the claimant also makes him especially qualified . . . to form an

23   overall conclusion as to the functioning capacities and limitations."  Lester, 81 F.3d at 833.

24   This is certainly true where, as here, "the parts of the functional restrictions arising from the

25   claimant's [different] impairments cannot be separated."  Id.

26   The Court further finds the ALJ's insistence on a confirmation of Dr. Witte's

27   diagnoses of bipolar disorder from a specialist in the field of psychiatry or psychology to be

28   pretextual.  The Ninth Circuit has said that "[w]hen confronted with conflicting medical

1    opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief

2    and unsupported by clinical findings." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.

3    2001) (citing Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)); Batson v. Comm'r,

4    359 F.3d 1190, 1195 (9th Cir. 2004).  However, such is not the case here—the ALJ was not

5    confronted with directly conflicting medical opinions as to the severity of Plaintiff's mental

6    impairments or her diagnosis of bipolar.  The record is clear: neither Dr. Goldheart nor Dr.

7    Drew outright disagree with Dr. Witte's diagnosis of bipolar disorder.  Dr. Goldheart stated

8    that "it is not possible to rule out a contribution from [b]ipolar [d]isorder."  AR 271.

9    Similarly, Dr. Drew found that "her attentional difficulties are likely secondary to some

10   combination of bipolar disorder and an undiagnosed neurological disease/syndrome."  AR

11   314.  Thus, the Court finds that the ALJ failed to assert specific and legitimate reasons

12   supported by substantial evidenced in the record for rejecting Dr. Witte's medical opinion.

13                          **b.    Dr. Goodheart[6]**

14        The ALJ rejected Dr. Goodheart's ultimate evaluation that Plaintiff was unable to

15   meet competitive standards for most work functions because "the [examining][7] physician's

16   opinion regarding the ultimate issue of disability is not necessarily conclusive."  AR 23.

17   Specifically, the ALJ cited the following as justifications for his rejection of Dr. Goodheart's

18   psychiatric opinion: (1) inconsistencies in Plaintiff's reported clean and sober status; (2)

19   inconsistencies with Dr. Witte's assessment of Plaintiff's ability to understand, remember,

20   carry out simple instructions, and ask questions; (3) inconsistencies in medical diagnoses;

21   and (4) an absence of any contemporaneous progress notes, testing, or other verification.  AR

22   23-24.

23        First, with respect to Plaintiff's history of drug use, any inconsistencies in the record

24   are not relevant to the ALJ's evaluation of Dr. Goodheart's credibility, or the ultimate issue

25

26   _____

27        [6]   Dr. Goodheart is an examining psychiatrist who evaluated Plaintiff at various times in his
     capacity as psychiatric examiner for the General Assistance Program.  AR 21.

28        [7]   Here, the ALJ referred to Dr. Goodheart as a "treating" physician; however, Dr. Goodheart
     is an examining physician.  See AR 23.

United States District Court
For the Northern District of California

1    of Plaintiff's mental impairment.[8]   Dr. Goodheart notes that Plaintiff used a great deal of

2    cocaine until 1994, used it moderately until 2002, and stopped completely thereafter.  AR

3    267.  Dr. Drew, however, reports that "Plaintiff stated that she has not used cocaine since the

4    early 1990s."  AR 313.  The ALJ also cited testimony from Plaintiff's friend who said that

5    "she acts now like she did when using in [the] 1990s."  AR 23.  The ALJ went on to state that

6    "[Plaintiff's friend] stated he believes claimant is not presently using drugs but then admitted

7    he does not know what she is doing most of the time as she comes and goes on her own."

8    AR 24.  The Court finds this lay testimony to be highly speculative on the issue of Plaintiff's

9    current cocaine use and certainly not a basis on which to discredit Dr. Goodheart's medical

10   opinion.  These minor inconsistencies are not relevant because, according to all sources,

11   including Plaintiff herself, she no longer uses cocaine.[9]   If Plaintiff reported different dates

12   of remission to Dr. Goodheart and Dr. Drew, the Court finds it relevant only to the extent

13   that it affects Plaintiff's own credibility.

14            Furthermore, contrary to the ALJ's contention, there is not a conflict in medical

15   opinion as to Plaintiff's reported marijuana use.  Dr. Goodheart reported that Plaintiff

16   significantly reduced her marijuana use in late 2005, but still uses it occasionally.  AR 267.

17   This statement is not inconsistent with his diagnosis that Plaintiff's marijuana abuse is full

18   remission since 2006.  AR 272.  Dr. Gonick-Hallows confirmed that Plaintiff smokes

19   marijuana for appetite stimulation.  AR 200.  Dr. Drew also confirmed that Plaintiff

20   occasionally uses marijuana.  AR 313.  Plaintiff did not testify as to her current marijuana

21   use.  Rather, her testimony regarding drug use was limited to her use of cocaine.  AR 332.

22            Second, the ALJ referenced Dr. Witte and Dr. Goodheart's difference of opinion as to

23   Plaintiff's ability to understand, remember, and carry out simple instructions and ask simple

24   questions as a basis for rejecting Dr. Goodheart's entire medical opinion.  AR 23.  Dr.

25

26        [8]    The Court addresses the proper standard under which to evaluate a claimant's drug use/abuse
     in Section III.B.5. of this Order.

27

28        [9]    Contrary to the ALJ's assertion, Plaintiff did not testify that "there has been no drug use
     since 1993."  AR 25.  Rather, according to the transcript of the administrative hearing, Plaintiff only
     stated that she did not use cocaine after 1993.  AR 332.

**United States District Court**
For the Northern District of California

1   Goodheart found her "seriously limited, but not precluded" in these areas, while Dr. Witte

2   found her to be "good" in these areas.  AR 274, 260.  Dr. Goodheart found her "unable to

3   meet competitive standards" in remembering work-like procedures, while Dr. Witte found

4   her performance in this area to be "fair."  AR 274, 260.  Again the ALJ plucked these minor

5   discrepancies out of a much larger evaluation in which Dr. Goodheart and Dr. Witte mostly

6   agreed.  AR 274, 260.  Of the twenty-five categories of evaluation, both Dr. Goodheart and

7   Dr. Witte agreed as to Plaintiff's degree of functionality in at least sixteen of them—most

8   often finding that she was "unable to meet competitive standards" or her abilities in these

9   areas were "poor or none."[10]  AR 260, 262, 274.  Furthermore, in his written assessment, Dr.

10  Goodheart acknowledged these differences in opinion and provided an explanation as to why

11  he came to a different conclusion.  AR 272-73.

12       According to regulatory authority, "the more consistent an opinion is with the record

13  as a whole, the more weight [an ALJ] will give to that opinion."  20 C.F.R. § 416.927(c)(4).

14  Here, the ALJ entirely disregarded a large part of the record in which Dr. Goodheart and Dr.

15  Witte agreed as to Plaintiff's very limited functional capacity in favor of a few comparatively

16  minor discrepancies.  The Court finds that the minor discrepancies regarding Plaintiff's

17  ability to understand, remember, and carry out simple instructions and ask simple questions

18  are not a basis on which to reject Dr. Goodheart's entire psychiatric opinion, which is largely

19  consistent with Dr. Witte's opinion.

20

21  _____

22       [10]   The categories in which Dr. Goodheart and Dr. Witte appear to agree include the following:
    Maintain regular attendance and be punctual within customary, usually strict tolerances; Sustain an
23  ordinary routine without special supervision; Work in coordination with or proximity to others without
    being unduly distracted; Complete a normal workday and workweek without interruptions from
24  psychologically based symptoms; Perform at a consistent pace without an unreasonable number and
    length of rest periods; Accept instructions and respond appropriately to criticism from supervisors; Get
25  along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes;
    Respond appropriately to changes in a routine work setting; Deal with normal work stress; Deal with
26  stress of semiskilled and skilled work; Interact appropriately with the general public; and Maintain
    socially appropriate behavior.  AR 260, 262, 274.  However, the Court notes that Dr. Goodheart rated
27  Plaintiff on a five-level scale, whereas Dr. Witte used only a four-level scale.  Additionally, the
    description of evaluation levels differed.  Dr. Goodheart rated Plaintiff on a scale of "Unlimited or Very
28  Good," "Limited but Satisfactory," "Seriously Limited, but Not Precluded," "Unable to Meet
    Competitive Standards," and "No Useful Ability to Function."  AR 274.  Dr. Witte rated Plaintiff on a
    scale of "Unlimited of Very Good," "Good," "Fair," and "Poor or None."

United States District Court
For the Northern District of California

1    Third, the ALJ cites Dr. Drew's alleged questioning of Dr. Goodheart's ADHD

2  diagnosis as a basis on which to reject the latter's opinion.  However, the ALJ exaggerates

3  the discrepancy between Dr. Drew's medical opinion and Dr. Goodheart's diagnosis of

4  ADHD.  Dr. Drew noted that "[c]learly, [Plaintiff's] clinical presentation is much more

5  severe, and requires greater intervention, than a diagnosis of [ADHD].  This is not to suggest

6  that she does not have attentional difficulties.  However, her attentional difficulties are likely

7  secondary to some combination of bipolar and an undiagnosed neurological

8  disease/syndrome.  Children and adults who have ADHD do not have the plethora [of]

9  symptoms and pathological behaviors exhibited by [Plaintiff] unless they also have some

10  other underlying primary disorder."  AR 314.  Thus, Dr. Drew did not disagree with Dr.

11  Goodheart's diagnosis of ADHD; rather, he merely opined that Plaintiff's ADHD was

12  secondary to another underlying impairment.  Thus, there appears to be no dispute that

13  Plaintiff suffered from significant attentional impairments.

14    In Lester, the Ninth Circuit found it irrelevant whether the claimant's symptoms

15  resulted solely from his mental impairment or from a combination of his mental and physical

16  impairments.  81 F.3d at 829-30.  Because the consequences of multiple impairments are "so

17  inextricably linked," courts must consider the combined effect of those impairments.  Id.  By

18  analogy, it matters not whether Dr. Goodheart and Dr. Drew agreed upon a single diagnosis.

19  Rather, "the Commissioner must consider whether [a claimant's] impairments taken together

20  result in limitations" severe enough to warrant a finding of disabled.  Id. at 830 (emphasis in

21  original).  Thus, the Court finds that the alleged discrepancy between Dr. Goodheart and Dr.

22  Drew's ultimate diagnoses is exaggerated and not a basis on which to reject Dr. Goodheart's

23  psychiatric opinion.

24    Fourth, the ALJ criticizes Dr. Goodheart's report as "unsupported by any

25  contemporaneous progress notes, testing or other verification" and "all subjective – page

26  upon page of retelling claimant's own narration."  AR 24.  Defendant cites Bayliss v.

27  Barnhart for the proposition that an ALJ need not rely on the opinion of a physician who

28  based his assessment on the claimant's own subjective complaints without reviewing

United States District Court
For the Northern District of California

objective medical data or reports from treating physicians.  427 F.3d 1211, 1217 (9th Cir. 2005).  Here, however, in addition to summarizing Plaintiff's own narration of her symptoms, Dr. Goodheart twice documented his own clinical observations and reviewed Plaintiff's treatment history with Dr. Witte.  AR 269-72.  Thus, the Court finds that Dr. Goodheart's reports are not unsupported or merely a subjective retelling of Plaintiff's own story.

Finally, the Court finds Defendant's reliance on Ukolov v. Barnhart to be unpersuasive.  420 F.3d 1002 (9th Cir. 2005).  In Ukolov, the court found that the failure of an ALJ to address a piece of medical evidence was harmless error, in part, because the evidence listed only symptoms but provided no medical opinion as to the claimant's condition.  Id. at 1006 n.6.  In the present case, however, Dr. Goodheart enumerated Plaintiff's symptoms based on his own mental status examination, reviewed Plaintiff's treatment with Dr. Witte, made his own medical diagnoses, and detailed Plaintiff's disability and impairment in work functions.  AR 269-73.  While the ALJ documented much of this testimony, he appears not to have given it any weight.  Even if the Court were to accept that Dr. Goodheart's report lacked sufficient objective support, the ALJ still failed to adequately justify his rejection of Dr. Goodheart's medical opinion.  "To say that medical opinions are not supported by sufficient objective findings . . . does not achieve the level of specificity [the Ninth Circuit's] prior cases have required. . . .  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  The Court concludes that the ALJ's failure to credit or adequately justify his rejection of Dr. Goodheart's psychiatric opinion was error.

14

United States District Court
For the Northern District of California

### c.    Dr. Drew[11]

The ALJ stated that he is "giving the assessment of Dr. Drew little weight as by his own conclusions, there needs to be more testing as the described symptoms are more than merely 'psychological' and could be drug related." AR 25.  The ALJ, however, provided no explanation for why he gave Dr. Drew's opinion on the severity of Plaintiff's impairments absolutely no consideration.  Dr. Drew completed a PRTF in which he noted that Plaintiff met the listing for 12.02 Organic Mental Disorders, 12.04 Affective Disorders, 12.06 Anxiety-Related Disorders, and 12.08 Personality Disorders.  AR 296.  Additionally, he rated Plaintiff's degree of functional limitation as follows: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; extreme difficulties in maintaining concentration, persistence, or pace; and insufficient evidence of episodes of decompensation.  AR 306.  He conducted a battery of cognitive and intellectual functioning tests.  AR 310-12.  Based on her test results, history, and clinical presentation, Dr. Drew concluded that "it is extremely difficult to see how she could possible be trained for or

---

[11]    In his capacity as a clinical psychologist/neuropsychologist, Dr. Drew performed a consultative examination of Plaintiff in January 2009. AR 308.  He issued his psychological evaluation report in January 2009.  He completed a PRTF in February 2009.  AR 296.  The ALJ was in possession of these materials prior to issuing a decision in April 2009.

In a letter to the ALJ, Plaintiff's attorney for the administrative proceedings—Ian Sammis—indicated that he and the ALJ had disputed the need for additional psychological testing at the hearing held in December 2008.  The letter reads as follows: "At the hearing held on December 4, 2008, you indicated that psychological testing was needed for the record to be complete and I respectfully disagreed.  After discussion, I volunteered to have the claimant tested by a psychologist of my choice and provide you with the record.  You refused.  I have gone ahead and done it anyway and enclosed is the report of Dr. Steven Drew."  AR 167.

While the Court agrees with Defendant that "the regulatory scheme does not require that a treating physician perform the consultative examination," XMSJ at 23 (quoting Arago v. Astrue, 457 Fed. Appx. 700, 702 (9th Cir. 2011)), the regulations also state that an ALJ "will not request a consultative examination until [he has] made every reasonable effort to obtain evidence from [a claimant's] own medical sources." 20 C.F.R. § 416.912(e) (emphasis added).  Thus, contrary to Defendant's assertion, Plaintiff's refusal to undergo additional testing by a physician of the ALJ's choosing is not an independent basis on which to deny benefits.  The record is clear that Plaintiff did take part in a consultative examination with Dr. Drew.  Thus, at this stage in the proceedings it is not clear why additional testing is necessary to resolve any alleged discrepancies in the record.

Finally, the regulatory scheme merely states that "[i]f you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind." 20 C.F.R. § 416.918(a) (emphasis added).  Nothing in the regulations require a finding of not disabled for refusing to take part in a consultative examination.  Nor does this provision relieve the ALJ of his duty to properly consider the entire record in accordance with the law and all other regulatory provisions.

**United States District Court**
For the Northern District of California

1   maintain gainful employment. . . . [T]he thought of trying to train her to learn the duties and

2   responsibilities for a specific job is frankly overwhelming." AR 315.  Without providing any

3   explanation, the ALJ conclusorily rejected Dr. Drew's medical observations and findings.

4          To the extent that the ALJ agreed with Dr. Drew's recommendation that Plaintiff be

5   further evaluated, the Court finds this to be an insufficient basis on which to reject Dr.

6   Drew's opinion in its entirety.  Dr. Drew appears to recommend further evaluation for

7   purposes of treatment, not for purposes of determining the severity of Plaintiff's disability.

8   See AR 314-15.  Dr. Drew made clear in his PRTF that he found Plaintiff to be disabled

9   within the meaning of the SSA.  See AR 296-307.   Finally, Dr. Drew never suggested that

10  Plaintiff's impairments were drug related.  To the contrary, he stated that "[Plaintiff's]

11  marijuana use appears to be medicinal and is not likely to be a contributing factor to her

12  clinical presentation."  AR 313.  Thus, the Court finds that the ALJ failed to provide specific

13  and legitimate reasons supported by substantial evidence in the record for rejecting Dr.

14  Drew's psychological assessment.

15         In conclusion, the Court finds that Dr. Witte, Dr. Goodheart, and Dr. Drew's medical

16  opinions are not inconsistent with respect to the severity of and the functional limitations

17  caused by Plaintiff's mental impairments.  "Where the purported existence of an

18  inconsistency is squarely contradicted by the record, it may not serve as the basis for the

19  rejection of an examining [or treating] physician's conclusions."  Nguyen v. Chater, 100 F.3d

20  1462, 1465 (9th Cir. 1996).  Thus, the ALJ's refusal to give due weight to their opinions was

21  error and the Court directs the Commissioner to properly consider this evidence on remand.

                        **d.      Dr. Tekeli and Dr. Gonick-Hallows**

23         While Plaintiff does not take issue with the ALJ's treatment of these opinions, the

24  Court finds them relevant to the extent that they are not inconsistent with Dr. Witte, Dr.

25  Goodheart, and Dr. Drew's medical opinions.  Dr. Tekeli is Plaintiff's internal medicine

26  physician.  AR 24.  The bulk of his medical opinion testimony relates to Plaintiff's past

27  physical impairments and does not appear contested.  Nevertheless, Dr. Tekeli did include

28  some comments regarding Plaintiff's psychological presentation as well.  Prior to Plaintiff's

United States District Court
For the Northern District of California

1    alleged bike accident in 2004, Dr. Tekeli noted that Plaintiff suffered from general fatigue,

2    anxiety, and low weight.  AR 221.  He also noted that he "believe[d] her problems [were]

3    mostly lifestyle related, poor sleep habits, poor nutrition."  AR 221-22.  Following Plaintiff's

4    alleged bike accident, Dr. Tekeli found that Plaintiff suffered from depression, but was

5    intolerant of anti-depressant medication.  AR 250.  He also indicated that Plaintiff had

6    "possible ADD."  AR 239.  Finally, he encouraged Plaintiff to seek further evaluation at

7    CMH.[12]  Id.

8          Dr. Gonick-Hallows conducted a psychological evaluation of Plaintiff in April 2006.

9    AR 200-03.  Dr. Gonick-Hallows indicated that "overall . . . [Plaintiff] was . . . a person with

10   significant anxiety features."  AR 200.  While he could not totally rule out the possibility of

11   ADHD, he felt that her anxiety symptoms were "predominant."  AR 202.  He diagnosed her

12   with "Axis I: 300.02 – Generalized Anxiety Disorder with Anxiety-Based Attention Deficit.

13   305.9 – Rule out Mixed Substance Abuse.  Axis II: 301.9 – Mixed Personality Disorder with

14   Inadequate, Borderline, and Narcissistic Features."[13]  Id.  He also assigned Plaintiff a GAF

15   score of 63, which indicates mild to moderate symptoms.  See Keyser v. Comm'r of Soc.

16   Sec. Admin., 648 F.3d 721, 727 (9th Cir. 2011) (claimant received a GAF of 55 to 65, which

17   indicates mild to moderate symptoms).  Nevertheless, Dr. Gonick-Hallows concluded that

18   Plaintiff's "overall prognosis is less than clear and would depend upon a complex mix of

19   physical and emotional features."  AR 203.  He also noted that Plaintiff admitted to using

20   marijuana most of her life, including at that time for appetite stimulation.  AR 200.

21

22

23

24

25

26        [12]   "CMH" appears to be the facility at which testing for ADD takes place.

27        [13]   Axis I includes the clinical syndromes that are the focus of the diagnosis; Axis II includes
     the long-standing chronic conditions that may affect the clinical syndromes listed in Axis I.  American
28   Psychiatric Association (APA), Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, Text
     Revision (DSM-IV-TR).

United States District Court
For the Northern District of California

### e.    Dr. Smith[14]

The ALJ did not specifically mention Dr. Smith in his decision, however he appears to have relied heavily on Dr. Smith's opinion at step three.  Dr. Smith partially completed a PRTF in May 2006, finding that the functional limitations caused by Plaintiff's 12.06 Anxiety-Related Disorder and 12.08 Personality Disorder were mild as to restrictions in activities of daily living, mild as to difficulties in maintaining social functioning, mild as to difficulties in maintaining concentration, persistence, or pace, and insufficient evidence as to episodes of decompensation.  AR 192.  He also found her understanding and memory, sustained concentration and persistence, social interaction, and adaptation to be mostly "not significantly limited."  AR 196-97.

The Court finds the ALJ's apparent reliance on Dr. Smith's opinion to be troubling for several reasons.  First, Dr. Smith's report contains no explanation as to his findings.  AR 182-99.  Second, Dr. Smith's opinion does not account for subsequent medical evidence, including the medical opinion of treating physician Dr. Witte, the psychological assessments of examining psychiatrist Dr. Goodheart, and consultative examining psychologist Dr. Drew.  Even if Dr. Smith's opinion was entitled to weight at the time it was rendered, its continued validity is questionable in light of more recent evidence.  Plaintiff cites Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986), for the proposition that "[w]here a claimant's condition is progressively deteriorating, the most recent medical report is the most probative."  In Young, the court declined to follow this general rule because it was far from clear that the claimant's condition was worsening.  Id.  Here, however, the record as a whole suggests that Plaintiff's condition is progressively deteriorating.[15]  Thus, the Court finds it significant that Dr.

---

[14]    It is unclear from the record in what capacity Dr. Smith evaluated Plaintiff.  However, Plaintiff and Defendant agree that he is a State agency reviewing physician (i.e., a nonexamining physician).  Opp'n to XMSJ (dkt. 32) at 8; XMSJ at 11.

[15]    In August 2008, Dr. Witte noted that "meds have helped."  AR 286.  In October 2008, Dr. Goodheart found that Plaintiff was "undergoing some improvement with treatment."  AR 271.  Following a January 2009 examination, Dr. Drew indicated that Plaintiff's "clinical presentation is much more severe . . . than a diagnosis of ADHD," and that "attentional difficulties are likely secondary to some combination of bipolar disorder and some undiagnosed neurological disease/syndrome."  AR 314.

United States District Court
For the Northern District of California

1    Smith's review did not include the subsequent opinions of Dr. Witte, Dr. Goodheart, and Dr.

2    Drew.

3           Finally, Dr. Smith's opinion as to the severity of Plaintiff's impairment is contradicted

4    by all of the other evidence in the record, including Dr. Witte's, Dr. Goodheart's, and Dr.

5    Drew's medical opinions.  Specifically, Dr. Smith's PRTF is contradicted by treating

6    physician Dr. Witte's PRTF.  Dr. Witte found that Plaintiff's mental impairments caused

7    moderate restriction of activities of daily living, marked difficulties in maintaining social

8    functioning, often deficiencies of concentration, persistence, or pace resulting in failure to

9    complete tasks in a timely manner (in work settings or elsewhere), and repeated (three or

10   more) episodes of deterioration or decompensation in work or work-like settings.  AR 262.

11   While examining psychiatrist Dr. Goodheart did not complete a PRTF, Dr. Smith's PRTF is

12   inconsistent with Dr. Goodheart's opinion that Plaintiff's mental incapacity is severe.  AR

13   272.  Finally, Dr. Smith's PRTF is contradicted by consultative examining psychologist Dr.

14   Drew's PRTF.  See AR 306 in which Dr. Drew finds that Plaintiff's mental impairments

15   cause marked restriction of activities of daily living; marked difficulties in maintaining social

16   functioning; extreme (i.e., greater than marked) difficulties in maintaining concentration,

17   persistence, or pace; and insufficient evidence to determine episodes of decompensation.  In

18   spite of this directly conflicting evidence, the ALJ appears to have afforded significant

19   weight to Dr. Smith's opinion as he adopted his conclusions exactly.[16]

20          The law is clear that "[t]he opinion of a nonexamining physician cannot by itself

21   constitute substantial evidence that justifies the rejection of the opinion of either an

22   examining physician or a treating physician."  Lester, 81 F.3d at 831 (citing Pitzer, 908 F.2d

23   at 506 n.4; Gallant, 753 F.2d at 1456).  In Gallant, the Ninth Circuit held that "'the report of

24   [a] non-treating, non-examining physician, combined with the ALJ's own observance of [the]

25   claimant's demeanor at the hearing' did not constitute 'substantial evidence' and, therefore,

26   did not support the Commissioner's decision to reject the examining physician's opinion that

27

28          [16]    The Court notes that the ALJ was not explicit about his reliance thereon in the decision.
     Nevertheless, Dr. Smith's PRTF appears to be the only evidence in support of the ALJ's determination
     at step three.

United States District Court
For the Northern District of California

1   the claimant was disabled." <u>Lester</u>, 81 F.3d at 831 (quoting <u>Gallant</u>, 753 F.2d at 1456).

2   Similarly, in <u>Pitzer</u>, the Ninth Circuit held that where there was nothing in the record to

3   support the nonexamining physicians' written reports, the nonexamining physicians'

4   opinions "with nothing more" could not constitute substantial evidence.  908 F.2d 502, 506

5   n.4.  The Ninth Circuit has only expressed a willingness to reject the opinion of a treating or

6   examining physician where the contradictory testimony of a nonexamining medical advisor

7   is accompanied by an abundance of additional evidence in the record, such as laboratory test

8   results, contrary reports from examining physicians, and conflicting testimony from the

9   claimant herself.  <u>See Magallanes</u>, 881 F.2d at 751-55.

10       The Court finds that Dr. Smith's opinion, alone, does not satisfy the substantial

11  evidence requirement necessary to support the ALJ's conclusions as to the severity of

12  Plaintiff's impairments, or his decision to reject the medical opinions of Dr. Witte, Dr.

13  Goodheart, and Dr. Drew.  Thus, the Court concludes that the ALJ's treatment of these

14  medical opinions was error.  The Court REMANDS for reconsideration consistent with this

15  Order.

16                    **2.      The ALJ Did Not Properly Consider the Severity of Plaintiff's
                                Impairment at Step Three**

17       At steps two and step three of the five-step sequential analysis, the ALJ is required to

18  determine the severity of the claimant's mental impairments.  At step two, the ALJ must first

19  establish the presence of a medically determinable impairment.  20 C.F.R.§ 416.920a(c);

20  12.00 Mental Disorders, ¶ B.  Second, the ALJ must determine the severity of those

21  identified mental impairments by rating the degree of functional loss or limitation resulting

22  from the impairment.  <u>Maier v. Comm'r of Soc. Sec. Admin.</u>, 154 F.3d 913, 915 (9th Cir.

23  1998) (per curium); 20 C.F.R. § 416.920a(c), (d); 12.00 Mental Disorders, ¶ C.  The ALJ

24  must rate the claimant's degree of functional limitation by evaluating four areas of function:

25  (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace;

26

27

28

and (d) episodes of decompensation.[17]   20 C.F.R. § 416.920a(c)(3).  The first three

functional areas (activities of daily living; social functioning; and concentration, persistence,

or pace) are rated on a five-point scale: none, mild, moderate, marked, and extreme.  20

C.F.R. § 416.920a(c)(4).  The fourth functional area (episodes of decompensation) is rated on

a four-point scale: none, one or two, three, four or more.  Id.  If the ALJ rates the degree of

limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area,

he will "generally conclude that [the] impairment(s) is not severe, unless the evidence

otherwise indicates that there is more than a minimal limitation in your ability to do basic

work activities."  20 C.F.R. § 416.920a(d)(1).  Where the ALJ determines that a claimant's

mental impairment is severe, he must then move onto step three.  20 C.F.R. § 416.920a(d)(2).

At step three, the ALJ considers whether the claimant meets or equals a listed

impairment.  Id.  Federal Regulations and the Ninth Circuit are clear that "[a] generalized

assertion of functional problems is not enough to establish disability at step three."  Tackett

v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999) (citing 20 C.F.R. § 404.1526).  "The mere

diagnosis of an impairment listed in 20 C.F.R. Appendix 1, Subpart P, § 4.12 is not sufficient

to sustain a finding of disability."  Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990).

"For a claimant to show that his impairment matches a listing, it must meet all of the

specified medical criteria.  An impairment that manifests only some of those criteria, no

matter how severely, does not quality."  Sullivan v. Zebley, 493 U.S. 521, 530 (1990),

superseded by statute on other grounds.  The specified medical criteria are broken up into

three categories: "paragraph A" criteria, "paragraph B" criteria, and "paragraph C" criteria.

20 C.F.R. § 404, Subpt. P, App. 1.  The required level of severity for a listed disorders is met

when the requirements in both "paragraph A" and "paragraph B" are satisfied, or when the

requirements in both "paragraph A" and "paragraph C" are satisfied.  Id.  The "paragraph A"

criteria differ depending on the particular listing.  See generally id.  "Paragraph B" requires

---

[17]   This technique used to rate the degree of functional loss or limitation resulting from impairment is commonly documented in a PRTF.  See Keyser v. Comm'r of Soc. Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011).  The same technique is also used at step three and is referred to as the "paragraph B" criteria.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

that the mental impairment result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. Id. "Paragraph C" requires a finding that the claimant's impairment results in a "complete inability to function independently outside the area of one's home." Id.

At step two, the ALJ determined that Plaintiff suffered from a severe mental impairment. AR 19. At step three of the analysis, the ALJ concluded that Plaintiff did not have a listed impairment or combination of impairments. Id. In making this finding, the ALJ considered whether the "paragraph B" criteria were satisfied. Id. The ALJ concluded that "the degree of functional limitation caused by [Plaintiff's] mental impairment (listing 12.06 Anxiety-Related Disorders, 12.08 Personality Disorders) is mild with respect to restrictions of activities of daily living; mild with respect to difficulties in maintaining social functioning; mild with respect to difficulties in maintaining concentration, persistence, or pace; [and] no episodes of decompensation based on the record."[18] AR 19-20. Accordingly, the ALJ determined that the "paragraph B" criteria were not satisfied. AR 20. The ALJ further determined that the "paragraph C" criteria were not satisfied.[19] Id. Because either "paragraph B" or "paragraph C" criteria must be met in order to satisfy the requirements of 12.06 and 12.08, the ALJ did not consider Plaintiff satisfied the "paragraph A" criteria for listings 12.06 or 12.08.

Plaintiff contends that the ALJ failed to consider all evidence relevant to a determination that she has impairments meeting or equaling Listing 12.08 Personality Disorders. As previously noted, the only evidence in the record that supports the ALJ's determination of Plaintiff's functional limitations under the "paragraph B" criteria is Dr. Smith's PRTF. Furthermore, Dr. Witte, Dr. Goodheart, and Dr. Drew all agree that

---

[18]   The ALJ made his determination at step three based on the same PRTF analysis that applies at step two of the five-step analysis.

[19]   The Court accepts for purposes of this Order the ALJ's conclusion that the "paragraph C" criteria were not met.

United States District Court
For the Northern District of California

Plaintiff's functional limitations are much more severe.  "Particularly in a case where the medical opinions of the physicians differ so markedly from the ALJ's, it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings."  Embrey v. Brown, 849 F.2d 418, 422 (9th Cir. 1988).  In Embrey, three treating physicians and one consulting physician determined that the claimant was disabled.  Id.  The ALJ reached the opposite conclusion.  Id.  Because he failed to provide detailed, reasoned, and legitimate rationales for disregarding all four physicians' opinions, the Ninth Circuit remanded the case for proper consideration of the evidence.  Id.  Similarly here, one treating physician and two examining physicians agree that Plaintiff met the "paragraph B" criteria and the ALJ failed to properly consider their medical opinions.  Thus, the Court agrees with Plaintiff that the ALJ's conclusory dismissal of Dr. Drew's, Dr. Goodheart's, and Dr. Witte's opinions in favor of Dr. Smith's opinion was improper.

The Court also finds the ALJ's determination at steps two and three of the sequential evaluation to be contradictory.  Without any explanation, the ALJ determined that Plaintiff suffered from severe mental impairments at step two, and then proceeded to deny that the limitation caused by that severe impairment satisfied the "paragraph B" criteria at step three.  According to the ALJ's findings under "paragraph B," Plaintiff's functional limitations were mild in the first three categories and zero in the fourth.  Such findings would be more consistent with a conclusion at step two that the impairment is not severe.  See 20 C.F.R. § 416.920a(d)(1).  Nevertheless, here the ALJ concluded that Plaintiff's impairments were indeed severe at step two.  AR 19.  Because the ALJ did not provide any explanation for his findings, the Court has no basis on which to reconcile this apparent contradiction.

Finally, the Court finds that the absence of any explanation or reference to medical evidence as to the degree of functional limitation at step two and three of the analysis constitutes legal error.  See 20 C.F.R. § 416.920a(e)(4) ("the written decision must incorporate the pertinent findings and conclusions based on the technique" and it "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental

United States District Court
For the Northern District of California

1    impairment(s)"); see also Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 726 (9th Cir.

2    2011) (finding legal error where "the written decision did not document the ALJ's

3    application of the technique[,] did not include a specific finding as to the degree of limitation

4    in any of the four functional areas[, and] simply referenced and adopted the PRTF completed

5    earlier by [another physician]").

6         For the same reasons mentioned in Section III.B.1. of this Order, the Court finds that

7    the ALJ improperly discounted the opinions of Drs. Witte, Goodheart, and Drew in favor of

8    Dr. Smith and further finds the ALJ's determination of the "paragraph B" criteria is

9    unsupported by substantial evidence.  In order to properly evaluate the severity of Plaintiff's

10   mental impairments at step three, the ALJ must reevaluate the "paragraph B" criteria, giving

11   proper weight to the medical opinions of Drs. Witte, Dr. Goodheart, and Dr. Drew.

12   Additionally, depending on the outcome, he may also be required to evaluate the "paragraph

13   A" criteria.  The Court REMANDS for reconsideration of step three consistent with this

14   Order.

15                    **3.    The ALJ Failed to Properly Credit Plaintiff's Testimony**

16        The ALJ states that "the claimant's statements concerning the intensity, persistence

17   and limiting effects of these symptoms are not credible to the extent they are inconsistent

18   with the . . . [RFC] assessment."  AR 24.  "For the ALJ to reject the claimant's complaints,

19   [he] must provide 'specific, cogent reasons for the disbelief.'"  Lester, 81 F.3d at 834

20   (quoting Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990)).  "Once the claimant

21   produces medical evidence of an underlying impairment, the Commissioner may not

22   discredit the claimant's testimony as to the subjective symptoms merely because they are

23   unsupported by objective evidence."  Id. (citing Bunnell v. Sullivan, 947 F.2d 341, 343 (9th

24   Cir. 1991)).  "Unless there is affirmative evidence showing that the claimant is malingering,

25   the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and

26   convincing.'"  Id. (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).  "General

27   findings are insufficient; rather, the ALJ must identify what testimony is not credible and

28

United States District Court
For the Northern District of California

1  what evidence undermines the claimant's complaints." Id. (citing Dodrill v. Shalala, 12 F.3d

2  915, 918 (9th Cir. 1993)).

3         Because the ALJ did not find that Plaintiff was malingering, he was required to

4  provide clear and convincing evidence to justify his rejection of her testimony.  The Court

5  finds that the ALJ failed to credit Plaintiff's testimony in accordance with this requirement.

6  The ALJ's rejection of Plaintiff's testimony merely because it was inconsistent with his RFC

7  analysis was error.  See Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1234 (9th

8  Cir. 2011) (finding that a conflict between the claimant's testimony and the ALJ's RFC

9  determination legally insufficient to support the ALJ's credibility finding).  Rather, he was

10 required to identify specific, cogent reasons for his disbelief.  To that end, the ALJ noted that

11 Plaintiff claimed to have worked at various times, but never reported any IRS earnings, and

12 that she reported different dates on which she claimed to have stopped using cocaine.  AR

13 23.  However, the Court finds that these minor discrepancies do not suffice as "clear and

14 convincing" evidence sufficient to disregard her testimony regarding the intensity,

15 persistence, and functionally limiting effects of her symptoms.  As Plaintiff's counsel

16 persuasively argues, Plaintiff's confusion and memory deficiencies could very well be a

17 manifestation of the very psychological difficulties from which she suffers.  Opp'n to XMSJ

18 at 12; see also Pate-Fires v. Astrue, 564 F.3d 935, 945-46 (8th Cir. 2009) (ALJ may not rely

19 on a claimant's behavior as evidence that she was not credible where medical evidence

20 showed that claimant's behavior was attributable to her mental illness).

21         The ALJ also points to testimony by Plaintiff's friend Salvitor Fericano, stating that

22 "[h]e essentially says she is not credible."  AR 23-24.  However, the ALJ also states that he is

23 "giving his testimony little weight in that he has generally discussed [Plaintiff's] behavior as

24 she was while admittedly regularly using cocaine from 1994 through 2002."  AR 24.  Thus,

25 the Court also finds that Fericano's testimony as to Plaintiff's credibility falls short of the

26 clear and convincing standard.  For the aforementioned reasons, the Court REMANDS for

27 proper consideration of Plaintiff's credibility consistent with this Order.

28

United States District Court
For the Northern District of California

### 4.   The ALJ Failed To Properly Consider All of Plaintiff's Limitations in his RFC Evaluation

"The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p. Furthermore, the "RFC assessment must always consider and address medical source opinions," and in cases where the ALJ's assessment conflicts with an opinion from a medical source, the ALJ "must explain why the opinion was not adopted." Id. As explained in Section III.B.1, the Court finds that the ALJ failed to properly credit the medical opinions of Drs. Witte, Dr. Goodheart, and Dr. Drew. Thus, the Court REMANDS for proper consideration of Plaintiff's RFC, consistent with this Order.

### 5.   Additional Testing Is Not Required in Order to Reach the Ultimate Issue of Disability

The ALJ found that "there needs to be more testing as the described symptoms are more than merely 'psychological' and could be drug related." AR 25 (citing Dr. Drew's medical opinion). Specifically, the ALJ concluded that a psychiatric/psychological consultative evaluation and verification of Plaintiff's clean and sober status was necessary in order to confirm her medical diagnosis. AR 24-25. However, as previously noted, the absence of a confirmed medical diagnosis does not preclude a finding as to whether Plaintiff suffers from a combination of severe impairments sufficient to warrant a finding of disabled under the SSA. The ALJ failed to explain why the present record, properly considered, is inadequate for purposes of making such a determination.[20]

Additionally, the ALJ did not properly evaluate Plaintiff's drug use/abuse. Regulatory authority provides that where there is medical evidence of drug addiction or alcoholism, the ALJ must determine whether the claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. § 416.935(a). One of the key

---

[20]   As previously noted, the parties dispute the propriety of the ALJ's refusal to accept a consultative examination from Plaintiff's treating source. See MSJ at 22; XMSJ at 17; Opp'n to XMSJ at 13. The Court declines to resolve this dispute because Dr. Drew performed a psychological consultative examination and his report is now part of the record.

1    factors that the ALJ must consider is whether he would still find the claimant disabled if she

2    stopped using drugs or alcohol.  20 C.F.R. § 416.935(b)(1).

3        Here, no physician has suggested that Plaintiff is currently struggling with drug

4    addiction or alcoholism.  Furthermore, no physician indicated that her present occasional

5    marijuana use is a contributing factor material to the determination of disability.  Dr.

6    Goodheart noted that Plaintiff reported using cocaine in the past because it "brought some

7    'clarity' to her thinking and helped her 'focus better' and she sees it as having provided some

8    'self-medication for [her] ADHD.'"  AR 267.  He also noted that she reported using

9    marijuana "to help her 'keep eating' and stave off her marginal weight status."  Id.

10   Additionally, Dr. Drew indicated that "her [current] marijuana use appears medicinal and is

11   not likely to be a contributing factor to her clinical presentation."  AR 313.  These statements

12   indicate that Plaintiff used drugs in order to relieve the symptoms of her mental impairments,

13   not that Plaintiff's drug use was necessarily the cause of her symptoms.  Nevertheless, the

14   ALJ did not reach the ultimate issue of whether Plaintiff's possible drug use was a

15   contributing factor material to the determination of disability.  Thus, the Court REMANDS

16   for proper consideration of whether Plaintiff's drug use is a contributing factor to her mental

17   impairment(s).

18   **IV.    CONCLUSION**

19       For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Summary

20   Judgment and DENIES Defendant's Cross-Motion for Summary Judgment.  The Court

21   VACATES the Commissioner's final decision and REMANDS for reconsideration consistent

22   with this Order.

23       **IT IS SO ORDERED.**

24

25   Dated: March 25, 2013                    _____
                                              CHARLES  R. BREYER
26                                            UNITED STATES DISTRICT JUDGE

27

28